IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TONYA OAKS,                      §
                                 §
            Plaintiff,           §
                                 §
v.                               §
                                 §   CIVIL ACTION NO. H-06-2880
AMERIPATH, INC.,                 §
                                 §
            Defendant.           §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Tonya Oaks, brings this action against AmeriPath, Inc. for employment discrimination based on race in violation of 42 U.S.C. § 1981, and on race, color, gender, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.[1]   Pending before the court is Defendant's Motion for Summary Judgment (Docket Entry No. 31).   For the reasons explained below, defendant's motion will be granted in part and denied in part.

**I.   Undisputed Facts**

In May of 2002 plaintiff began working for AmeriPath as a Territory Manager (TM) pursuant to a written employment agreement.[2]

---

[1]Plaintiff's Second Amended Original Complaint, Docket Entry No. 27, pp. 8-10.

[2]See Defendant's Motion for Summary Judgment (Defendant's Motion), Docket Entry No. 31, p. 3.

TMs at AmeriPath are divided into two groups: the Anatomical Pathology Group (AP Group) and the Dermato Pathology Group (DP Group).[3]  In 2002 plaintiff was the only AP Group TM in Houston.[4] That year plaintiff was assigned one very large account, Physicians Endoscopy Center (PEC), which had been secured by Dr. Robert Petras, AmeriPath's National Director for Gastrointestinal Pathology.[5]  Plaintiff's job duties included maintaining the PEC account and acquiring new accounts by marketing AmeriPath's testing and information services to physicians for use in the detection, diagnosis, evaluation, and treatment of diseases and medical conditions.[6]

TMs at AmeriPath are supervised by Regional Sales Managers (RSMs).  The first RSM to whom plaintiff reported was David Tyson. However, from sometime in 2002 until approximately November of 2004 plaintiff reported to RSM John Lyons who supervised TMs in Texas and Oklahoma.[7]  In March of 2003 Lyons prepared the first annual evaluation of plaintiff's performance.[8]  The evaluation covered the period beginning May 14, 2002, and ending April 1, 2003.  It

---

[3]Id.

[4]Id. at pp. 4-5.

[5]Id. at p. 5.

[6]Id. at pp. 3 and 5.

[7]Id. at p. 4.

[8]Exhibit L to Defendant's Motion, Docket Entry No. 31.

-2-

reflected that plaintiff met or exceeded the requirements of her job in all relevant categories, that she received an overall score of 46 points indicating a performance level of "2," which stands for "meets requirements," and that her performance level entitled her to a prorated merit increase in pay of 0.83%.  The evaluation also stated that plaintiff's career aspirations included a "management opportunity in the future."  The section titled "Employee Challenges and Developmental Areas" stated, <u>inter alia</u>, "[m]inimal number of new accounts closed in 2002 . . . push for results and grow business at a more aggressive rate in 2003."[9]

In April of 2003 AmeriPath hired a second TM for Houston, Stefanie Marsh, and divided plaintiff's territory in half. Plaintiff retained the northern half of the Houston market and the PEC account while Marsh assumed responsibility for the rest.[10]

In March of 2004 Lyons prepared the second annual evaluation of plaintiff's job performance for the period beginning April 1, 2003, and ending April 1, 2004.[11]  The report reflected that plaintiff either exceeded the requirements of her job or was "outstanding" in all relevant categories, that she received an overall score of 65 points indicating a performance level of "3," which stands for "exceeds requirements," and that her performance

---

[9]<u>Id.</u>

[10]Defendant's Motion, Docket Entry No. 31, pp. 5-6.

[11]Exhibit K to Defendant's Motion, Docket Entry No. 31.

level entitled her to a merit increase in pay of 4.00%. The evaluation stated that plaintiff's career aspirations included "Local trainer (Regional)—Mentor," "Operations," and "Hospital development." Under the heading "Employee Challenges and Developmental Areas" Lyons wrote, "1. Creating leverage with our products against the competition to increase overall market presence. 2. Expanding urology business in Houston market."[12]

In December of 2004 AmeriPath transferred Joe Haas, the RSM for its Western Region, to Houston to serve as RSM for its Southwest Region. That position required Haas to supervise TMs in Houston, Austin, San Antonio, and parts of Louisiana, Mississippi, and Alabama.[13] In March of 2005 Haas prepared the annual evaluation of plaintiff's job performance for the period beginning April 1, 2004, and ending April 1, 2005.[14] The evaluation stated that plaintiff either met or exceeded the requirements of her job or was "outstanding" in all relevant categories, that she received an overall score of 55 points indicating a performance level of "2," which stands for "meets requirements," and that her performance level entitled her to a merit increase in pay of 3.00%. The evaluation also stated that the plaintiff's career aspirations included "ops." The comment section titled "Associate Challenges

---

[12]Id.

[13]Defendant's Motion, Docket Entry No. 31, p. 7.

[14]Exhibit J to Defendant's Motion, Docket Entry No. 31.

and Developmental Areas" was left blank, and in the section titled "Associate Strengths" Haas wrote that plaintiff had "done a great job with her largest client despite having to deal with billing issues."[15]

In 2005 AmeriPath added a third TM to the AP Group in Houston, Missy Lilienstern.   The territories of the two existing TMs, plaintiff and Marsh, were realigned to accommodate the third TM and, as before, plaintiff retained her largest client, PEC.[16]

In August of 2005 AmeriPath promoted Haas from RSM to Vice-President of Sales, and plaintiff began reporting to Lee Rourk.[17] That same month plaintiff, Marsh, and Rob Pettengill interviewed for the position of RSM with AmeriPath's Managing Director, Dr. Aldred, in Dallas.[18]  Although none of the three interviewees received a promotion in 2005, a year later, in August of 2006, Marsh was promoted to the position of RSM.[19]

In October of 2005 AmeriPath discharged the plaintiff,[20] and replaced her with Jody Parent.[21]

---

[15]<u>Id.</u>

[16]Defendant's Motion, Docket Entry No. 31, p. 8.

[17]<u>Id.</u> at p. 7.

[18]Defendant's Motion, Docket Entry No. 31, pp. 9-11.

[19]Marsh Deposition, Exhibit C attached to Defendant's Motion, Docket Entry No. 31, p. 28.

[20]Defendant's Motion, Docket Entry No. 31, p. 10.

[21]See Deposition of Stefanie Marsh, Exhibit C attached to Defendant's Motion, Docket Entry No. 31, p. 73.

## II.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case."  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  <u>Id.</u>  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  <u>Id.</u>

-6-

### III.  <u>Analysis</u>

In her Second Amended Complaint (Docket Entry No. 27), plaintiff alleges that AmeriPath discriminated against her on the basis of gender, race, color, and/or national origin by subjecting her to a hostile work environment, failing to promote her to the position of RSM, and discharging her in violation of Title VII and § 1981.[22]  AmeriPath argues that it is entitled to summary judgment on all of plaintiff's Title VII and § 1981 claims.[23]  In response plaintiff argues only that AmeriPath's motion should be denied because there exist genuine issues of material fact regarding whether AmeriPath discriminated against her on the basis of race, color, and national origin, when in 2005 it failed to promote her to the position of RSM and discharged her.[24]  Since plaintiff has failed to address her gender discrimination or hostile work environment claims, AmeriPath argues that these claims have been abandoned.[25]

---

[22]Plaintiff's Second Amended Original Complaint, Docket Entry No. 27, pp. 8-10.

[23]Defendant's Motion, Docket Entry No. 31, pp. 1-2.

[24]Plaintiff Tonya L. Oaks' Response and Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Opposition), Docket Entry No. 35, p. 2 (referring to these claims collectively as "race" claims).

[25]Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Defendant's Reply), Docket Entry No. 36, p. 2.

**A.   Title VII Claims**

1.   <u>Applicable Law</u>

Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 prohibit employers from taking adverse employment actions against employees on the basis of race.   Title VII also prohibits adverse actions based on gender and national origin.   A private right of action exists under Title VII and § 1981 only for violations involving intentional discrimination.   See <u>Roberson v. Alltel Information Services</u>, 373 F.3d 647, 651 (5th Cir. 2004) ("The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff.").   Neither Title VII nor § 1981 protects plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination.   See <u>Nieto v. L & H Packing Co.</u>, 108 F.3d 621, 624 (5th Cir. 1997).   The issue is not whether the defendant made an erroneous decision, but whether the defendant's decision was made with discriminatory motive.   See <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1091 (5th Cir. 1995).   Plaintiffs in Title VII and § 1981 cases may rely on either direct or circumstantial evidence, or both.   See <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 350 (5th Cir. 2005); <u>Wallace v. Methodist Hosp. System</u>, 271 F.3d 212, 219 (5th Cir. 2001), <u>cert. denied</u>, 122 S.Ct. 1961 (2002).

(a)   Direct Evidence

Direct evidence is "evidence which, if believed, proves the fact [in question] without inference or presumption." <u>Fabela v.</u>

-8-

<u>Socorro Independent School District</u>, 329 F.3d 409, 415 (5th Cir. 2003).  If a plaintiff presents direct evidence of discrimination, she is allowed to bypass the burden-shifting analysis used in circumstantial evidence cases.  <u>Id.</u>  Plaintiff does not argue that she has direct evidence of discrimination but, instead, that she can overcome the defendant's motion for summary judgment with circumstantial evidence using the burden-shifting analysis stated in <u>McDonnell Douglas Corp. v. Green</u>, 93 S.Ct. 1817 (1973).

(b)  Circumstantial Evidence

The <u>McDonnell Douglas</u> burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a <u>prima facie</u> case.  <u>Id.</u> at 1824.  Once the plaintiff establishes a <u>prima facie</u> case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the actions at issue. <u>Id.</u> If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's <u>prima facie</u> case disappears, and the burden shifts to the plaintiff to produce evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination.  A plaintiff meets this burden by producing evidence tending to show

(1)  that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or

(2)  that the defendant's reason, while true, is only one of the reasons for its conduct, and another

'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).

Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In a mixed-motive case the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. Id. at 312-313. "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 120 S.Ct. 2097 (2000).

In Reeves the Supreme Court clarified the McDonnell Douglas analysis by explaining that a plaintiff need not produce evidence of both pretext and discriminatory intent to create a fact issue on a discrimination claim but that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 120 S.Ct. at 2109. The Court explained that proof of falsity will ordinarily allow a jury to draw an inference of discrimination but that two exceptions exist: (1) if the record conclusively reveals some other, nondiscriminatory reason for the employer's action, and (2) if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. Id. The Court emphasized that once a plaintiff

demonstrates a <u>prima facie</u> case and produces evidence that the defendant's nondiscriminatory reasons for the employment action are unworthy of credence, no additional evidence of pretext is required to avoid summary judgment.   <u>Id.</u>   See also   <u>Blow v. City of San Antonio, Tex.</u>, 236 F.3d 293, 297-98 (5th Cir. 2001) (no "additional, independent evidence of discrimination" is required). The Fifth Circuit has described the <u>Reeves</u> standard as follows:

> [A] plaintiff can avoid summary judgment when the 'evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the  actions of which the plaintiff complains.

<u>Price v. Federal Express Corp.</u>, 283 F.3d 715, 722 n.4 (5th Cir. 2002).

2.   <u>Failure to Promote</u>

Plaintiff alleges that AmeriPath intentionally discriminated against her on the basis of race, color, and/or national origin by failing to promote her from TM to the RSM in 2005.  Asserting that the position to which plaintiff sought a promotion in August of 2005 was eliminated after she interviewed for it, AmeriPath argues that plaintiff is unable to establish either a <u>prima facie</u> case of discriminatory failure to promote, or a genuine issue of material fact regarding the truth of the stated reason for its failure to promote her, i.e., that the position she sought was eliminated in a reorganization that followed Haas's promotion.

(a)   _Prima Facie_ Case

To establish a _prima facie_ case of discriminatory failure to promote using the _McDonnell Douglas_ analysis the plaintiff must demonstrate that:  (1) she belongs to a protected class; (2) she sought and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications she was rejected, and (4) the position she sought was filled by someone outside her protected class or she was otherwise not promoted because of her protected characteristic.  See _Blow_, 236 F.3d at 296.

There is no dispute that plaintiff is African-American and, therefore, belongs to a protected class, or that she was qualified for the RSM position.  Instead, citing Haas's deposition, AmeriPath asserts that plaintiff

> cannot meet elements 3 or 4 to establish her _prima facie_ [failure to promote] case. . . AmeriPath decided not to fill the anticipated new position of RSM for which [plaintiff] applied.  The decision not to create the position was made shortly after [plaintiff], Marsh, and Pettengill applied for the position.  [Plaintiff] can produce no evidence that AmeriPath continued to seek applicants for the position that was in fact eliminated.[26]

Plaintiff responds that the third element of her _prima facie_ case has been established because she was never promoted to the position of RSM even though she had expressed interest in a

---

[26]Defendant's Motion, Docket Entry No. 31, p. 16.

managerial position as early as 2003.[27]   Plaintiff also responds
that the fourth element of her _prima facie_ case has been
established because the RSM position she sought was the position
vacated by Haas and filled by Rourk, who is not a member of her
protected class.[28]   Since Rourk was promoted to the RSM position in
May of 2005, before Haas was promoted, AmeriPath replies that
plaintiff is unable to offer any

> evidence that she applied for the RSM position for which
> Rourk applied and was hired.  The position for which
> Rourk was hired was based in Dallas, not Houston. . . .
> Oaks offers no evidence that she had any interest in this
> position other than the fact that she had previously
> expressed an interest in a management position.  In her
> brief, [plaintiff] cites her deposition testimony to
> support her new argument that she was not informed of the
> Dallas-based RSM position Rourk assumed in May 2005. . .
> A closer look at this cited testimony only indicates
> [plaintiff's original belief] . . . that she and Rourk
> applied for the same RSM position the company considered
> creating in August 2005, which would have been based in
> Houston. . . Any claim [plaintiff] alleges regarding a
> failure to promote claim in May 2005 is time-barred.[29]

The requirement that a plaintiff apply for an open position,
i.e., a position for which the employer was seeking applicants, to
establish a _prima facie_ case is interpreted to accommodate various

---

[27]Plaintiff's Opposition, Docket Entry No. 35, pp. 18-19.  See
also  AmeriPath's Employee Performance Appraisal of Oaks for the
Period 5/14/02 to 4/1/03, Exhibit 3 attached thereto, section
titled "Individual's Career Aspirations" stating "management
opportunity in the future."

[28]_Id._ at p. 20 (citing Aldred Deposition, Exhibit 13 attached
thereto, pp. 37-38).

[29]Defendant's Reply, Docket Entry No. 36, p. 11.

situations.  Citing <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1133 (11th Cir. 1984), the Fifth Circuit has explained that "[w]here the plaintiff claims discrimination in promotion on the basis that jobs for which she was qualified were never posted or otherwise opened for formal applications, she must establish that the company had some reason or duty to consider her for the post." <u>Jones v. Flagship Intern.</u>, 793 F.2d 714, 724 (5th Cir. 1986), <u>cert. denied</u>, 107 S.Ct. 952 (1987).  <u>See also</u> <u>Johnson v. Louisiana</u>, 351 F.3d 616, 622 (5th Cir. 2003) (when position is unpublicized, employee must show that employer had a duty or reason to consider her for the position).

In <u>Carmichael</u>, 738 F.2d at 1126, the African-American plaintiff applied for work with the defendant.  Upon being told that there were no positions available, the plaintiff told the defendant that he needed work.  As a result, the defendant agreed to hire the plaintiff as a part-time janitor and stockman with the understanding that he would receive a full-time position when one became available.  Eventually, the plaintiff received a full-time position in the repair shop, where he was paid minimum wage.  After having been employed for approximately one year, the plaintiff initiated a Title VII lawsuit against the defendant based on allegations that (1) he had expressed an interest in receiving a promotion within the company to any more desirable position that became available, (2) since he had expressed that interest two such

-14-

positions had become available and been awarded to white men, and
(3) the defendant failed to consider him for those positions on the
basis of race.  The trial court found that since the plaintiff had
only informally requested promotion within the company, he had
failed to establish a prima facie case under McDonnell Douglas due
to his resulting inability to specify particular jobs for which he
was qualified, he had applied, and he had been rejected in favor of
individuals not protected by Title VII.  Because the plaintiff
could not demonstrate that he had been refused an available job,
the trial court concluded that he could not establish a prima facie
case.  Rejecting the trial court's conclusion, the Eleventh Circuit
explained:

> [t]he defendant used no formal procedures for posting
> notice of available promotions or for determining who
> would be offered the promotion.  Instead, the company
> relied on "word of mouth" and informal review procedures.
> We have recognized that such subjective procedures can
> lead to racial discrimination, both because important
> information may be available only to whites and because
> such procedures place no check on individual biases. . .
> For this reason we have held that "[t]he failure to
> establish 'fixed or reasonably objective standards and
> procedures for hiring' is a discriminatory practice."

Carmichael, 738 F.2d at 1133 (quoting Watson v. National Linen
Service, 686 F.2d 877, 881 (11th Cir. 1982)).  The Eleventh Circuit
explained:

> To require this plaintiff to demonstrate an explicit
> expression of interest in specific jobs would also be at
> odds with the purposes of the prima facie case in
> analyzing evidence. . . The paradigmatic prima facie
> case, described in McDonnell Douglas, requires the
> plaintiff to prove that he "applied for" a job to

-15-

> eliminate an[] . . . obvious nondiscriminatory reason:
> that the plaintiff was not offered the job because the
> company did not know he was interested.  McDonnell
> Douglas "aligns closely the prima facie case with proof
> of elements within the plaintiff's own objective
> knowledge." . . . By showing that he applied, the
> plaintiff shows that the employer knew he was interested
> in the job.  But when there is no formal notice of the
> job's availability, the plaintiff may have no means,
> within his own knowledge, of showing whether the employer
> considered him or not.  Furthermore, when an employer
> uses such informal methods it has a duty to consider all
> those who might reasonably be interested, as well as
> those who have learned of the job opening and expressed
> an interest.

Id.

Like the employer in Carmichael who was on notice that the plaintiff desired to advance within the company, AmeriPath's annual reviews of plaintiff's performance contain notations that her career aspirations included managerial and regional training operations.  Nevertheless, plaintiff argues that AmeriPath failed to inform her about the opportunity for promoting to the RSM position give to Rourk in May of 2005,[30] and AmeriPath has not offered any evidence that plaintiff knew or should have known about that opportunity.  Moreover, only a few months later in August of 2005 when Haas promoted out of his RSM position, plaintiff received an e-mail seeking applications for an RSM position that she believed to have been Haas's position.[31]  Although plaintiff and two

_____

[30]Plaintiff's Opposition, Docket Entry No. 35, p. 21 (citing Deposition of Tonya L. Oaks, Exhibit 1 attached thereto, pp. 83-84).

[31]See Deposition of Tonya L. Oaks, Exhibit 1 attached to Plaintiff's Opposition, Docket Entry No. 35, p. 84.

other candidates interviewed for the position, AmeriPath allowed Rourk to assume all of Haas's duties.[32]

Without disputing that Rourk assumed all of Haas's RSM duties, plaintiff argues that AmeriPath denied her "the RSM position not once, but twice, and then attempted to craftily 'shuffle the deck' in order to make it appear that the position was eliminated."[33] Plaintiff argues that she was first denied the position when AmeriPath failed to consider her for the RSM position to which Rourk promoted, and then, several months later, she was denied the position again

> when [her] boss, Mr. Joe Haas, was promoted from RSM to Vice President Sales, [she] interviewed for Haas' vacated RSM position that according to [defendant] was later eliminated. Curiously, however, all of the work performed by Haas was absorbed by Rourk. A few months later, Ms. Stefanie Marsh (Caucasian), a TM located in Houston just like [the plaintiff], was promoted to RSM as well.[34]

As explained by the Eleventh Circuit in Carmichael, 738 F.2d at 1133, to require the plaintiff to demonstrate an explicit expression of interest in the specific job given to Rourk would be at odds with the purposes of the burden-shifting analysis described in McDonnell Douglas. That analysis requires the plaintiff to prove that she "applied for" a job to eliminate an obvious

---

[32]See Oral Deposition of Dr. Stephen Aldred, Exhibit D attached to Defendant's Motion, Docket Entry No. 31, p. 37 (stating that Rourk took all of Haas's work).

[33]Plaintiff's Opposition, Docket Entry No. 35, p. 3.

[34]Id.

nondiscriminatory reason:  that the plaintiff was not offered a specific job because the company did not know she was interested. By showing that her annual performance reviews contain written notations memorializing her desire to advance within the company, and that following Haas's promotion in August of 2005 she received notice about the availability of an RSM position for which she applied, plaintiff has made a prima facie showing that AmeriPath knew she was interested in the RSM job to which Rourk was promoted. Accordingly, the court concludes that plaintiff has satisfied the requirements for establishing a prima facie case on her failure to promote claim.  AmeriPath cannot avoid a Title VII violation by arguing that plaintiff failed to apply for a position she had no reason to know was available, or that she was not replaced by someone outside of her protected class when all the duties of that position were assumed by Rourk who is not African-American.[35]

(b)  Pretext

Plaintiff argues that AmeriPath's assertion that she was not promoted because the position she sought was eliminated and not filled by anyone is false because Aldred admitted during his

---

[35]Although AmeriPath has asserted that any claim that plaintiff may be attempting to assert based on its failure to consider her for the RSM position to which Rourk was promoted is time barred, AmeriPath has failed to substantiate its assertion with cites to any law or facts.  Since Rourk's promotion occurred in May of 2005 and plaintiff filed this action in September of 2006, less than two years from the date of Rourk's promotion, and since AmeriPath acknowledges that plaintiff only learned of Rourk's promotion during discovery in this case, the court is skeptical that such a claim would in fact be time barred.

deposition that Rourk took over all of Haas's duties and that the
southwest regional sales manager position that Haas had filled
ceased to exist in Houston but continued to exist in Dallas through
Rourk.[36]   Plaintiff argues that

> the position that Mr. Rourk filled, albeit a couple of
> months prior to Mr. Haas' promotion, was the same RSM
> position for which [plaintiff] had interviewed. . . By
> not allowing [plaintiff] to interview for the RSM
> position Rourk filled, the same position that took all of
> the work of the position for which [plaintiff]
> interviewed, it is clear that the positions are one and
> the same. Defendant's deceit is clear.  Ameripath first
> made Rourk (a TM) an RSM and gave him Haas' RSM duties.
> Ameripath then interviewed [plaintiff] for Haas' vacant
> RSM position even though that position's duties were to
> be given to Rourk.  [Plaintiff] was not told about the
> RSM vacancy that Rourk filled in order to prevent [her]
> from taking over Haas' RSM role.[37]

Plaintiff argues that race was a motivating factor for AmeriPath's
failure to promote her to the position of RSM because she was one
of only two female African-American TMs out of a total of eighty.[38]
Plaintiff also argues that as a TM she was treated differently than
other similarly situated TMs who were not African-American as
evidenced by the fact that during 2005 Marsh was assigned an
associate sales representative but she was not, and that on two
separate occasions her geographical territory was split and parts

---

[36]Plaintiff's Opposition, Docket Entry No. 35, pp. 20-21
(citing Aldred Deposition, Exhibit 13 attached thereto, pp. 37-38).

[37]Id. at p. 21.

[38]See Defendant's Original Answer to Plaintiff's Second Amended
Complaint, Docket Entry No. 29, ¶¶ 23 and 28 (admitting the
allegations made in ¶¶ 23 and 28 of Plaintiff's Second Amended
Complaint (Docket Entry No. 27)).

of it were given to other TMs for the stated reason that Houston was too big a territory for one TM.[39]   Plaintiff argues that AmeriPath's stated reason for the territorial splits is not credible because after she was discharged her non-African-American replacement, Jody Parent, became the only AP Group TM in Houston. Plaintiff argues that "the fact that the same geographical territory (i.e., Houston) was being handled by one person only after [her] departure,"[40] shows that "the only reason given for why [her] territory was split is not credible."[41]

In reply AmeriPath cites excerpts from Aldred's deposition that it argues establish that Haas's duties were not all assumed by Rourk but, instead, were divided between Rourk and Kim Fatosa.[42] However, pages 69 and 70 of Aldred's deposition are not included in the excerpts attached to AmeriPath's motion as Exhibit D. Moreover, even if they were attached, the court is not persuaded that they would entitle AmeriPath to summary judgment on plaintiff's failure to promote claim because they are contradicted by testimony that Aldred gave earlier on pages 37 and 38 of his deposition that Rourk absorbed all of Haas's responsibilities:

---

[39]Plaintiff's Opposition, Docket Entry No. 35, pp. 23-24.

[40]Id. at p. 24.

[41]Id.

[42]Defendant's Reply, Docket Entry No. 36, p. 12 (citing Aldred Deposition, Exhibit D attached to Defendant's Motion, Docket Entry No. 31, pp. 69-70).

Q.     What's your best understanding about the work that
       Mr. Haas was doing?  What happened to that work?
       Who took over?

A.     Mr. Rourk, Lee Rourk.

Q.     He took over all of his work; is that correct?

A.     Yes.

                          .  .  .


Q.     And now, Mr. Rourk took over the work even though
       he was no longer based in Houston, but he was based
       in Dallas; is that correct?

A.     Yes.

Q.     Okay.  And the southwest regional sales manager
       position at that point ceased to exist in Houston,
       but was existing at that point in time in Dallas,
       correct?

A.     Yes.[43]

Based on Aldred's testimony that the southwest regional sales manager's position held by Haas ceased to exist in Houston but continued to exist in Dallas, a reasonable fact-finder could conclude that AmeriPath's stated reason for its failure to promote the plaintiff, i.e., that the southwest regional sales manager's position held by Haas ceased to exist following Haas's promotion, was false.  See DeCorte v. Jordan, 497 F.3d 433, 439 (5th Cir. 2007) ("A reasonable juror certainly may infer discrimination when an employer offers inconsistent explanations for the challenged employment action.").  The court concludes that plaintiff has

---

[43]Aldred Deposition, Exhibit D attached to Defendant's Motion, Docket Entry No. 31, pp. 37-38.

raised a genuine issue of material fact for trial regarding the pretextual nature of AmeriPath's stated reason for its failure to promote her to the RSM position that precludes the court from granting AmeriPath's motion for summary judgment on her claim for discriminatory failure to promote.

3.   <u>Wrongful Discharge</u>

Plaintiff alleges that AmeriPath intentionally discriminated against her on the basis of race by discharging her in the fall of 2005.   AmeriPath argues that plaintiff was discharged for poor performance evidenced by her failure to generate new business. Plaintiff argues that AmeriPath's stated reason for her discharge is false.

(a)   <u>Prima Facie</u> Case

To establish a <u>prima facie</u> case of discriminatory discharge using the <u>McDonnell Douglas</u> analysis plaintiff must demonstrate that she:  (1) belongs to a protected class; (2) was qualified for her position; (3) was discharged; and (4) was replaced by a person outside her protected class, "or, in the case of disparate treatment, shows 'that others similarly situated were treated more favorably.'"   <u>See</u> <u>Okoye v. University of Texas Houston Health Science Center</u>, 245 F.3d 507, 512-513 (5th Cir. 2001) (quoting <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 404 (5th Cir. 1999)).

AmeriPath concedes that plaintiff "can establish that she is a member of a protected class, that she was qualified for the position that she lost, that she suffered an adverse employment action, and that she was replaced with a person not in her class."[44] Nevertheless, AmeriPath argues that plaintiff has failed to establish a <u>prima facie</u> case of discriminatory discharge because she "cannot establish that employees outside her protected class were retained or treated differently under circumstances nearly identical to that of the Plaintiff."[45]  AmeriPath cites no authority for this argument, and the court has found none.  Because it is not disputed that plaintiff was replaced by someone outside her protected class, the court concludes that she has established a <u>prima facie</u> case of discriminatory discharge.  <u>See</u> <u>Okoye</u>, 245 F.3d at 513.  <u>See also</u> <u>Strickland v. Aaron Rents, Inc.</u>, 2006 WL 770578, *5-*6  (W.D. Tex. 2006) (citing <u>Okoye</u> in support of its rejection of the same argument when made by the defendant in that case).

(b)  Pretext

AmeriPath argues that in early 2005 plaintiff's superiors decided to terminate her employment because she had generated only

---

[44]Defendant's Motion, Docket Entry No. 31, p. 14.  See also <u>id.</u> at p. 1 ("Oaks can establish a *prima facie* case regarding her claim that she was terminated because of her race."); Deposition of Stefanie Marsh, Exhibit 8 attached to Plaintiff's Opposition, Docket Entry No. 35, pp. 36 and 73 (confirming that Jody Parent, a Caucasian female, took over all of plaintiff's Houston territories).

[45]Defendant's Motion, Docket Entry No. 31, p. 14.

$43,000 of new business during the entire year of 2004, but that they did not discharge her until October of 2005 because they feared losing plaintiff's largest client, PEC.  Citing the deposition testimony of Haas, AmeriPath asserts that neither Haas nor Aldred was "satisfied with [plaintiff's] efforts to generate new business as a TM.  Both Haas and Dr. Aldred were aware that [plaintiff] had only generated $43,000 in new sales in 2004. . . Haas testified that this was very poor performance and that other TMs generated $43,000 in new business in one month."[46]

Plaintiff argues in response that AmeriPath's contention that she was discharged for poor performance is false because she generated approximately $800,000 of new sales in 2004 and that the failure to generate "new business" was not a criteria "in effect for TMs, and was not the basis for paying, measuring, or incentivizing TMs during 2004."[47]  Asserting that AmeriPath's stated reason for her discharge is contradicted by her annual performance reviews, all of which show that she either met or exceeded the requirements of her job, or that her job performance was "outstanding," plaintiff argues that AmeriPath's stated reason for her discharge is a pretext for discrimination.[48]  As evidence that

---

[46]Defendant's Motion, Docket Entry No. 31, pp. 18-19 (citing Haas Deposition, Exhibit B attached thereto, p. 159).

[47]Plaintiff's Opposition, Docket Entry No. 35, p. 4.

[48]Id.

AmeriPath's stated reason for her discharge is false, plaintiff cites AmeriPath's 2004 Territory Manager Commission Plan, AmeriPath's 2004 Sales Commission Report, AmeriPath's New Account Sales Report for January through August of 2005, and AmeriPath's written review of her job performance for the 2004/2005 year.

AmeriPath's 2004 Territorial Manager Commission Plan reflects that TMs were paid 0.2% commission on their base or existing business, 5% commission on all net revenue exceeding base and up to 49.9% of their assigned quota, and 8% on all net revenue above 50% of their assigned quota.[49]  Testimony of Stephanie Marsh confirms that in 2004 TMs were compensated according to a sales quota system and that in 2005 AmeriPath changed to a compensation system that was focused more on territory growth.[50]

Plaintiff's 2004 sales quota was $900,000.  AmeriPath's 2004 Sales Commission Report for plaintiff states that her sales increased from $2,086,177 in 2003 to $2,883,027 in 2004, for a total increase of $796,850.[51]

AmeriPath's New Account Sales Report for the first three months of 2005 states that plaintiff signed 27 new accounts over her existing accounts from the previous year, and that these

---

[49]Plaintiff's Opposition, Docket Entry No. 35, pp. 13-14, and Exhibit 7 attached thereto.

[50]Id. at p. 14 (citing Marsh Deposition, Exhibit 8 attached thereto, pp. 53-55).

[51]Id. (citing Exhibit 9 attached thereto).

accounts generated $136,201 of new sales.  This report also states that during the same three-month period Marsh signed only five new accounts and that those accounts generated $75,132 of new sales.[52]

AmeriPath's written review of plaintiff's job performance for the period of April 1, 2004, to April 1, 2005, states that Haas rated her as follows:  Plaintiff "meets requirements" as to "Drive for Results" ("Consistently ranks higher in sales performance versus one's peers . . . meets monthly sales quotas, and exceeds in increasing net revenue, maximizing sales, developing new markets, and expanding business growth for existing laboratories.").[53] Haas's written evaluation of plaintiff's job performance for the year ending April 1, 2005, is inconsistent with AmeriPath's argument that in early 2005 Haas and Aldred had decided to terminate her employment for poor performance based on her failure to generate more than $43,000 in new business.[54]  AmeriPath's written documentation of plaintiff's job performance for 2004 and early 2005 contradict Haas's deposition testimony that in early 2005 he and others at AmeriPath decided to terminate her employment because she was not producing new business and did not make an effort to bring in new business.  Plaintiff argues, and the court concludes, that the contradiction between AmeriPath's stated reason

---

[52]<u>Id.</u> at p. 16 (citing Exhibit 12 attached thereto).

[53]<u>Id.</u> at p. 14 (citing Exhibit 10 attached thereto).

[54]Defendant's Motion, Docket Entry No. 31, pp. 18-19.

for her discharge (poor sales performance in 2004 and early 2005) and AmeriPath's written record of her sales performance raises a genuine issue of material fact for trial regarding the pretextual nature of AmeriPath's stated reason for her discharge that precludes the court from granting AmeriPath's motion for summary judgment on her discriminatory discharge claim.

### 4.   Hostile Work Environment and Gender-Based Claims

Because plaintiff failed to address her gender discrimination and/or her hostile environment claims in her response in opposition to AmeriPath's motion for summary judgment, the court concludes that AmeriPath is entitled to summary judgment on those claims.

**B.   Section 1981 Claims**

To establish a claim under § 1981, plaintiff must allege facts showing that she (1) is a member of a racial minority, (2) the defendant intended to discriminate against her on the basis of race, and (3) the discrimination concerns one or more of the activities enumerated in the statute [e.g., contract enforcement]. See Felton v. Polles, 315 F.3d 470 (5th Cir. 2002). For the same reasons that the court has already concluded that there exist genuine issues of material fact for trial on plaintiff's Title VII claims for failure to promote and wrongful discharge based on race, color, and/or national origin, but not for her hostile environment or gender-based claims, the court concludes that there exist

genuine issues of material fact for trial on the claims for failure to promote and wrongful discharge that plaintiff has asserted under § 1981, but that AmeriPath is entitled to summary judgment on any hostile environment claim that plaintiff has asserted under § 1981. Id. at 483-84 (citing Shackelford, 190 F.3d at 403-04 n.2 ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability.")).

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that AmeriPath, Inc. is entitled to summary judgment on plaintiff's hostile environment and gender-based claims for discriminatory failure to promote and wrongful discharge, but that plaintiff has presented evidence raising genuine issues of material fact that preclude granting AmeriPath's motion for summary judgment on the claims that plaintiff has asserted for failure to promote and wrongful discharge based on race, color, and/or national origin under Title VII, and race under § 1981.  Accordingly, Defendant's Motion for Summary Judgment (Docket Entry No. 31) is **GRANTED IN PART AND DENIED IN PART.**

SIGNED at Houston, Texas, on this 12th day of October, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-28-